467 A.2d 14

**COMMONWEALTH of Pennsylvania**

v.

**June O'BRYANT, Appellant.**

Superior Court of Pennsylvania.

Argued June 11, 1980.

Filed Oct. 14, 1983.

Petition for Allowance of Appeal Denied Dec. 27, 1983.

Victor J. DiNubile, Jr., Philadelphia, for appellant.

Alan J. Sacks, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, CIRILLO and HOFFMAN, JJ.

BROSKY, Judge:

In June, 1978 appellant June O'Bryant was found guilty by a jury of charges of robbery and conspiracy. He was sentenced to a term of imprisonment of eight to sixteen years, to be followed by a probationary term of five years. This appeal followed.

The incident which led to his arrest occurred on December 17, 1977 when a restaurant known as Ellis' Luncheonette

was robbed at gunpoint by two men, one of whom wore a ski mask and was subsequently identified as appellant Mr. O'Bryant.

On appeal Mr. O'Bryant argues that the lower court erred in denying a request made by him to be tried without a jury. This argument was raised also by Mr. O'Bryant's co-defendant, William Sorrell, as well as by other appellants. Our Supreme Court considered their claims that 42 Pa.C.S.A. 5104(c) pursuant to which each of them had been denied the right to waive jury trial, is unconstitutional. The Court held that the statute is unconstitutional since it conflicts with Pa.R.Crim.Proc. 1101.[1] The case was remanded to us for disposition consistent with the Supreme Court's opinion. In view of that opinion, we reverse and remand the case for new trial.

In addition to the jury trial question, we will address claims made by Mr. O'Bryant that the suppression court erred in finding admissible: 1) a confession made by him; 2) a gun seized from his mother's residence, and 3) a photographic identification of him made by a witness to the robbery which led to his conviction.

Prior to trial, Mr. O'Bryant and his co-defendant Mr. Sorrell [2] moved pursuant to Pa.R.Crim.Proc. 1101 to be tried without a jury. That request was denied by the lower court because it believed that 42 Pa.C.S. 5104(c) gave to the Commonwealth a right to jury trial equal to that of a defendant. The Commonwealth demanded a jury trial.

In *Commonwealth v. Sorrell,* supra our Supreme Court did find 42 Pa.C.S. § 5104(c) unconstitutional. Based on that opinion we recently remanded for new trial in *Commonwealth v. Giaccio,* 311 Pa.Super. 259, 457 A.2d 875 (1983). As in *Giaccio* we remand this case for new trial with instructions to the lower court that if the appellant on retrial again states his intention to waive jury trial, the

1. *Commonwealth v. Sorrell,* 500 Pa. 355, 456 A.2d 1326 (1982).

2. See *Commonwealth v. Sorrell,* 319 Pa.Super. 103, 465 A.2d 1250 (1983).

court should proceed under Rule 1101 to decide whether to approve the waiver.

We turn now to appellant's suppression arguments.

■ We note at the outset that on appeal from the denial of a suppression motion we will consider only the evidence presented by the Commonwealth and so much of the evidence for the defense as fairly read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Baker*, 299 Pa.Super. 241, 445 A.2d 544 (1982).

Appellant argues that evidence of photo identifications of him should have been suppressed.

At trial the two eyewitnesses to the Ellis' Luncheonette testified and identified appellant as one of the perpetrators of the crime. Both witnesses, Selina Bailey and Howard Bartlett, had been shown photo arrays prior to trial.

■ On cross-examination by appellant's counsel, Ms. Bailey was asked whether she had been shown such an array and if so, with what result. We agree with the Commonwealth's contention that since appellant introduced the photo identification by Ms. Bailey, he cannot claim error in its introduction.

Furthermore, we note that at the start of the suppression hearing appellant's counsel did not move to suppress the identification by Ms. Bailey, but questioned only Mr. Bartlett's identification.[3]

Having determined that a complaint as to Ms. Bailey's pre-trial identification is not properly before us, we turn to the question of whether evidence of Mr. Bartlett's pre-trial identification should have been suppressed.

Mr. Bartlett, who was employed at Ellis' Luncheonette at the time of the robbery, was shown a photo array at his home on January 4, 1978. The array consisted of nine frontal photographs of black males. Mr. Bartlett identified the photo of June O'Bryant. The officer who showed Mr. Bartlett the photos testified that he did not tell the witness that he believed that a photo of one of the perpetrators was

3. No claim is made that the in-court identification of appellant by cither witness was tainted by pre-trial activities.

in the group and that any identifying information attached to the pictures was hidden.

Indeed, appellant does not now allege that the array was suggestive. Instead, he argues that evidence of the identification should have been suppressed because the witness Mr. Bartlett did not appear at the suppression hearing. In support of his claim he cites *Commonwealth v. Lee*, 262 Pa.Super. 280, 286, 396 A.2d 755, 757 (1978) in which we said, "at a hearing on a motion to suppress an 'on the scene' identification it is essential that the identifying witness testify."

*Lee*, decided after the date of appellant's suppression hearing, has been recently overruled insofar as it established a *per se* rule requiring the presence of identifying witnesses at suppression hearings.

In *Commonwealth v. Thompkins*, 311 Pa.Super. 357, 457 A.2d 925 (1983) we abandoned the *Lee* rule and held that,

The essential criteria in determining whether or not evidence of pre-trial identification is admissible is its *reliability* under all of the circumstances disclosed by the record. The question for the suppression court is whether the challenged identification has sufficient indicia of reliability to warrant its admission even though the confrontation procedure may have been suggestive.

Id., 311 Pa.Superior Ct. at 362–63, 457 A.2d at 928 (footnote deleted) (emphasis in original).

As we explained in *Thompkins* citing *Manson v. Brathwaite*, 432 U.S. 98, 113, 114, 97 S.Ct. 2243, 2252, 2253, 53 L.Ed.2d 140, 154 (1977), the following factors are to be taken into consideration in assessing the reliability of identification evidence:

... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Commonwealth v. Thompkins,* supra, 311 Pa.Super. at 363, 457 A.2d at 928.

As we have indicated, it is not contended that the photo array shown to Mr. Bartlett was suggestive. Appellant contends, however, that aside from suggestiveness, the Commonwealth had a burden to show the reliability of the identification. We believe appellant misconstrues the purpose of a suppression order.

As we noted in *Thompkins,* supra, 311 Pa.Superior Ct. at 363 n. 7, 457 A.2d at 928 n. 7.

> It should be emphasized that exclusionary rules are designed to prohibit improper police conduct.... The exclusion of identification testimony is proper when improper police conduct results in an impermissible suggestive confrontation. The primary focus is on police action. (citations deleted) (emphasis in original).

It is true that we have considered the factors outlined in *Manson v. Brathwaite,* supra, even when we have determined that the procedure was not suggestive. See *Commonwealth v. Johnson,* 301 Pa.Super. 13, 446 A.2d 1311 (1982); *Commonwealth v. Linder,* 284 Pa.Super. 327, 425 A.2d 1126 (1981). In neither case, however, did we state that we were required to consider the circumstances surrounding the identification.

In fact in *Linder,* supra, 284 Pa.Superior Ct. at 337, 425 A.2d at 1131, we noted that "a pre-trial identification will not be set aside unless the facts demonstrate that the identification procedure 'was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification".

In *Manson v. Brathwaite,* the suggestiveness of the identification procedure was conceded by the prosecution. The court went on, then, to consider the totality of the circumstances to determine whether *despite* the suggestiveness, the identification had sufficient reliability to be admissible. The court said that short of "a very substantial likelihood of misidentification" such evidence is for the jury to weigh. Id. 432 U.S. at 116, 97 S.Ct. at 2254.

Similarly in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the court considered the issue of whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive.

■ The case presented to us, on the other hand, is one in which suggestiveness is not even alleged. No improper police conduct is to be deterred. Under these circumstances we do not find the identification inadmissible.

Appellant also argues that a gun seized from his mother's home should have been suppressed because the search warrant in the possession of the searching officers was based in part on stale evidence. His specific complaint is that the allegation in the warrant as to his residence was stale because it dated back to October, 1977. The warrant was issued on January 5, 1978.

It is true that stale evidence cannot supply the probable cause necessary to issuance of a search warrant. See *Commonwealth v. Jackson,* 461 Pa. 632, 337 A.2d 582 (1975).

In *Commonwealth v. Ryan,* 300 Pa.Super. 156, 170, 446 A.2d 277, 284 (1982) we wrote, "Courts are reluctant to set a hard and fast rule as to what constitutes staleness of information for a search; such a determination must be made on a case by case basis."

■ At the suppression hearing the officer who secured the search warrant testified that the address named as appellant's residence was one he had given the police when he was arrested in October, 1977. Additionally, the officer stated that appellant had been arrested at the residence on previous occasions. The residence was that of appellant's mother and other family members. Under these circumstances, we will not find the information, which was at most three months old, stale.

We note that appellant also argues that the gun should be suppressed because in a separate homicide case in which appellant was the defendant, the lower court suppressed it

as having been seized pursuant to an invalid search warrant.

The trial court opinion makes mention of the suppression by another judge of the same court, but explains that the judge who presided in the instant case did not feel bound by the earlier ruling.

In support of that conclusion, the lower court cites *Commonwealth v. Brown*, 473 Pa. 458, 375 A.2d 331 (1977). In that case our Supreme Court refused to extend collateral estoppel to instances in which a defendant wished to take advantage of a ruling in a case in which he was not a party.

The court in *Brown* relied upon 18 Pa.C.S.A. § 306(g) which specifically permits the conviction of an accomplice even though the person who was supposed to have committed the offense has been acquitted. In explaining its decision the court affirmed that in criminal cases, collateral estoppel is available only if mutuality is present. That is, the issue of fact must have been determined in a suit between the same parties.

See also *Commonwealth v. Hamlin*, 302 Pa.Super. 86, 87–88 n. 1, 448 A.2d 538, 539 n. 1 (1982).

In the instant case, however, appellant seeks the benefit of a prior ruling in which he was the defendant. *Brown* and *Hamlin* do not prohibit invocation of collateral estoppel in such an instance and in fact suggest that because mutuality would be present under the facts as averred, collateral estoppel does apply.

The record before us, however, does not contain information about the earlier order. We leave to the lower court on remand the task of determining whether in fact a prior adjudication had been made that found the search warrant defective. If so, collateral estoppel can be invoked by appellant.

We come finally to appellant's contention that a confession made by him following his arrest should have been suppressed because it was obtained in violation of the *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977) six hour rule.

Appellant contends that the Commonwealth failed to meet its burden of proof as to its compliance with the *Davenport* rule. The Commonwealth must show by a preponderance of the evidence that the challenged evidence is admissible. *Commonwealth v. Baker*, supra.

The Commonwealth produced the testimony of the arresting officer who said that appellant was arrested on January 10, 1978 at 3:00 p.m. He was warned of his *Miranda* rights and questioned at 3:55 and again at 4:15. The officer testified that appellant was taken to the Police Administration building where he arrived at 8:25 and where arraignment began at 8:52.

We find the Commonwealth to have met its burden.[4]

Judgment of sentence reversed and remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

---

4. Given our disposition of the afore-discussed issues and remand for new trial, we need not reach the remaining questions raised by appellant, which allege trial error.