469 A.2d 1111

**COMMONWEALTH of Pennsylvania**

v.

**Allen R. DERRICK, a/k/a Derek Allen, Appellant.**

Superior Court of Pennsylvania.

Argued May 31, 1983.

Filed Dec. 16, 1983.

Petition for Allowance of Appeal Denied May 31, 1984.

518

520

Stanley M. Shingles, Philadelphia, for appellant.

Mariane E. Cox, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before ROWLEY, WIEAND and CIRILLO, JJ.

CIRILLO, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Philadelphia County, dated Febru-

ary 17, 1982. Following a non-jury trial, the appellant was convicted of robbery, theft, simple assault and criminal conspiracy. Post-verdict motions were filed and denied, and the appellant was sentenced to not less than 10 nor more than 23 months in prison on the robbery conviction and to two years concurrent probation on the conspiracy conviction. The court suspended sentence on appellant's remaining convictions of simple assault and theft.

Appellant asserts that the failure of the Commonwealth to adhere to the requirement of Pa.R.Crim.P. 1100 mandates his discharge. Additionally, appellant asserts that his arrest was illegal, that physical evidence was improperly seized, and that both the on-the-scene identification of the appellant by the complainant and the subsequent in-court identification were violative of due process. We disagree and consequently affirm the judgment of sentence.

At approximately 8:00 p.m. on March 18, 1980, Isiah Thomas, a 77 year old man, was on his way home from buying a quart of milk at a grocery store at 56th Street and Haverford Avenue when he was grabbed from behind by three young men and pushed to the ground. The assailants took Mr. Thomas's wallet containing his senior citizen identification card and $14.00. The assailants ran off, leaving Mr. Thomas lying on the ground.

Meanwhile, a little after 8:00 p.m., a Philadelphia police officer stopped at 57th Street and Haverford Avenue, saw three young males running out of the 500 block of North 56th Street. The manner in which the young men were running indicated to the officer, an eight-year veteran of the force, that the men were escaping from the scene of a robbery. The officer drove his vehicle around to a position where he could see what the men were going to do. He drove his car diagonally through 57th Street where, upon seeing the police vehicle, one of the young men threw a wallet on the ground. As the young men continued to run, now up Westminster Street off of Haverford Avenue, the officer got out of his car, picked up the wallet and saw that it contained a senior citizen's identification. Observing that

the runners were in their late teens or early twenties, the officer pursued them. During this time, the young men were desperately trying to get into a nearby recreation center. The officer arrested the three young men in the recreation center playground and radioed for assistance.

The young men were handcuffed and placed in a police wagon which arrived within minutes of the arrest. Since the recreation center, the scene of the arrest, was one block from where the person whose name appeared on the identification card lived, Isiah Thomas, the police officer took the boys to his residence. After asking Mr. Thomas to identify the money and the wallet, Mr. Thomas was asked to take a look at the males in the back of the police van to see if he could identify them. At that point, Mr. Thomas positively identified the appellant.

The tortuous procedural history of this case is as follows. The criminal complaint was filed on March 18, 1980 and thus the originally projected trial run date was September 15, 1980. Pa.R.Crim.P. 1100(a)(2), 42 Pa.C.S.A.[1] Appellant was released on bail. A pre-trial conference was held on May 5, 1980 and the case was listed for trial on June 24, 1980. However, on June 24, 1980, the public defender representing the appellant was permitted to withdraw because of a conflict of interest. New counsel was then appointed, and the case continued to August 26, 1980. Appellant's counsel was unprepared for trial on August 26, 1980, and the appellant executed a written waiver of his rights under Rule 1100 until October 23, 1980. The case was re-listed for trial on October 16, 1980. Appellant failed to appear for trial on October 16, 1980 and a bench warrant was issued. On October 21, 1980, the Commonwealth timely filed its first petition under Rule 1100(c)[2] to extend the

---

**1.** At the time relevant to this case, Rule 1100(a)(2) provided:

> Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

**2.** At the time relevant to this case, Rule 1100(c) provided:

time for commencement of trial. On November 20, 1980, after a hearing, the bench warrant was withdrawn; appellant's bail was reinstated; and appellant was released. Also at that time, new counsel, appellant's third, was appointed and the case was re-listed for December 23, 1980. On December 19, 1980, there being no objection by the appellant, the Commonwealth's petition to extend was granted and the time for commencement of trial extended to January 14, 1981. On December 23, 1980, appellant's counsel requested and was granted a continuance due to his unavailability for trial on that date because of his involvement in another trial. The present case was therefore continued to February 24, 1981.

■ The Commonwealth timely filed its second petition to extend on January 6, 1981.[3] Appellant's counsel failed to appear at the hearing on the Commonwealth's petition on February 11, 1981, and the court granted the petition and extended the time for commencement of trial to March 18, 1981. The case was listed for trial on February 24, 1981. However, on February 24, 1981 appellant's counsel was permitted to withdraw and the court ordered the court administrator to appoint new counsel. The case was continued to March 10, 1981. Appellant again appeared without counsel on March 10, 1981, no new counsel having been appointed, and the case was continued to May 12, 1981.

On March 16, 1981, the Commonwealth filed its third timely petition to extend. The record shows that on May

> At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced.

**3.** A petition for extension of time under Rule 1100(c) is timely if filed prior to the expiration of the mandatory period prescribed by the Rule or set forth in a previous order granting an extension of time. *Commonwealth v. Bytheway,* 290 Pa.Super. 148, 434 A.2d 173 (1981).

12, 1981 the case was again continued to July 21, 1981 due to the unavailability of appellant's newest counsel, his fourth. On May 20, 1981, the Commonwealth's petition to extend was granted and the time for commencement of trial extended to August 12, 1981.

Appellant failed to appear for trial on July 21, 1981 and a bench warrant was issued. The bench warrant was withdrawn on September 2, 1981; appellant's bail was increased to $1,500.00; and the case was relisted for October 23, 1981. Appellant later met the increased bail and was released. Once again, appellant failed to appear for trial on October 23, 1981 and a bench warrant was issued. Later that day it was discovered that the appellant was in custody in Holmesburg Prison on another charge, and the present case was set for trial on October 26, 1981. Appellant appeared for trial on October 26, 1981 without counsel. New counsel was appointed and the case set for trial on December 11, 1981, the earliest possible date consistent with the court's business.

On December 11, 1981, appellant was permitted to make an oral motion to dismiss under Rule 1100(f).[4] Appellant's motion was denied and the case proceeded to trial.[5]

**4.** At the time relevant to this case Rule 1100(f) provided:

(f) At any time before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this Rule has been violated. A copy of such application shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon. Any order granting such application shall dismiss the charges with prejudice and discharge the defendant.

**5.** On December 11, 1981 appellant was permitted to make oral motions to dismiss the charges under Rule 1100(f) and to suppress evidence. Appellant's motion to dismiss under Rule 1100(f) was denied and the court proceeded to hear testimony on the motions to suppress. The testimony on the suppression motions continued on December 14, 1981. At the close of the testimony on December 14, 1981, appellant's motions to suppress were denied. At that time appellant waived his right to a jury trial and the Commonwealth and the appellant agreed to the submission of the case on the basis of the suppression hearing testimony. The trial court found the appellant guilty of robbery, theft, simple assault and conspiracy.

Rule 1100 requires that a defendant be discharged unless all periods of delay beyond the run date are accounted for either by a valid waiver by the defendant, an extension granted the Commonwealth under Rule 1100(c), or an exclusion of time under Rule 1100(d). *See Commonwealth v. Colon,* 317 Pa.Super. 412, 464 A.2d 388 (1983). Appellant does not challenge the validity of his waiver of rights under Rule 1100 or the granting of the Commonwealth's three petitions to extend. Appellant asserts that the Commonwealth's last extension expired on August 12, 1981 and the Commonwealth did not file another petition to extend. Therefore, appellant argues that unless all the time from August 12, 1981 to December 11, 1981 is excludable under Rule 1100(d), he is entitled to discharge. We agree with the trial court that all the time after August 12, 1981 is properly excludable under Rule 1100(d).

At the time relevant to this case Rule 1100(d) provided:

(d) In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

(1) the unavailability of the defendant or his attorney;

(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded).

All of the delay from July 12, 1981 to December 11, 1981 is attributable to the unavailability of the appellant of his counsel.

> For the purpose of this rule, a trial commences when the trial judge determines that the parties are present and directs them to proceed voir dire or to opening statement, or to the hearing of any motions which had been reserved for the time of trial, *or to the taking of testimony, or to some other such first step in the trial.*
> Pa.R.Crim.P. 1100 comments (Emphasis supplied). *See Jones v. Commonwealth,* 495 Pa. 490, 434 A.2d 1197 (1981).
> In the instant case, the taking of testimony on appellant's motion to suppress constituted the first step in the trial of this case and thus appellant's trial commenced for purposes of Rule 1100 on December 11, 1981. *Commonwealth v. Fisher,* 244 Pa.Super. 361, 368 A.2d 762 (1976).

Appellant was free on bail when he failed to appear for trial on July 21, 1981. When appellant failed to appear at that time a bench warrant was issued. The bench warrant was withdrawn on September 2, 1981. In *Commonwealth v. Cohen*, 481 Pa. 349, 356, 392 A.2d 1327, 1331 (1978) our Supreme Court said:

> We therefore hold that a defendant on bail who fails to appear at a court proceeding, of which he has been properly notified, is unavailable from the time of that proceeding until he is subsequently apprehended or until he voluntarily surrenders himself. In such a case the Commonwealth is entitled to an exclusion of this period under section (d)(1) without the requirement of a showing of its efforts to apprehend the defendant during the period of his absence.

Appellant had notice of the trial scheduled for July 21, 1981. The record in this case contains a subpoena, receipt of which is acknowledged by the appellant's signature, informing the appellant the trial was scheduled for May 12, 1981. However, on May 12, 1981 appellant's counsel requested a continuance which was granted and the case continued to July 21, 1981. Since it was appellant's counsel who requested the continuance appellant can be held to have been properly notified of the July 21, 1981 trial; oral notice to appellant's counsel was sufficient. *See Commonwealth v. Cornish*, 311 Pa.Super. 72, 457 A.2d 118 (1983); *Commonwealth v. Snyder*, 280 Pa.Super. 127, 421 A.2d 438 (1980); *Commonwealth v. Bundridge*, 268 Pa.Super. 1, 407 A.2d 406 (1979). Therefore, since appellant was free on bail and had proper notice of the July 21, 1981 trial but failed to appear at that time, all the time from July 21, 1981 to September 2, 1981 is excludable under Rule 1100(d)(1). *Commonwealth v. Cohen, supra.*

Likewise, all the time from September 2, 1981 to October 23, 1981 is excludable under Rule 1100(d)(1). On September 2, 1981 the bench warrant issued for the appellant because of his failure to appear for trial on July 21, 1981 was withdrawn and the appellant's bail was increased to

$1,500.00. Appellant later met the increased bail and was released. The record establishes that the appellant was served with a subpoena, receipt of which is acknowledged by the appellant's signature, informing him of trial scheduled for October 23, 1981. However, appellant again failed to appear on that date. Later that day it was discovered that the appellant was incarcerated in Holmesburg Prison on other charges. Appellant's obligation to appear for trial on October 23, 1982 did not change because of his incarceration. *Commonwealth v. Colon, supra.* Thus, appellant was unavailable for trial from September 2, 1981 to October 23, 1981, and this period is excludable under Rule 1100(d)(1).

▆▆▆ The delay from October 23, 1981 to December 11, 1981 is also excludable under Rule 1100(d)(1). When on October 23, 1981 it was discovered that the appellant was in Holmesburg Prison the case was immediately scheduled for trial on October 26, 1981. However, at that time, appellant who previously had been represented by counsel, appeared without counsel. Counsel was immediately appointed and the court listed the trial for December 11, 1981, the earliest possible date consistent with the court's business. A defendant's unavailability can result in an excludable delay which is much greater than the actual time he is unavailable. *Commonwealth v. Robinson,* 498 Pa. 379, 446 A.2d 895 (1982); *Commonwealth v. Perry,* 296 Pa.Super. 359, 442 A.2d 808 (1982). The delay between October 23 and October 26, 1981 was the result of appellant's failure to appear for trial on October 23. A defendant is unavailable for trial within the meaning of Rule 1100(d)(1) when he is unrepresented by counsel. *Commonwealth v. Bussey,* 486 Pa. 221, 404 A.2d 1309 (1979). Thus appellant was unavailable for trial on October 26, 1981.

Appellant argues that after counsel was appointed on October 26, 1980 both he and his counsel were then available for trial and all the time between October 26, 1981 and December 11, 1981 cannot be excluded under Rule 1100(d)(1). We disagree. In *Commonwealth v. Perry, supra,* the defendant failed to appear on time for trial and

the case was passed and rescheduled for twenty-two days later. On appeal, this Court held that the 22-day delay was the result of the defendant's unavailability for trial and excluded the entire period under Rule 1100(d)(1). In *Commonwealth v. Robinson, supra,* the amended Rule 1100 trial run date on the defendant's case was April 24, 1975. On April 23, the defendant waived the running of the Rule until May 23, 1975. On May 23, the trial court disposed of the defendant's pre-trial motions. The defendant then requested and was granted a continuance to June 30, 1975, also waiving his Rule 1100 rights until that date. On June 30, 1975, the court put Robinson's case on "backup" status behind two other cases. On July 15, the defendant moved to dismiss the charges against him pursuant to Rule 1100(f) on the ground that his waiver had been valid only until June 30 and the Rule had since run. The trial court denied the defendant's motion and trial commenced on July 16, 1975. On appeal, the Superior Court reversed, finding a violation of Rule 1100. Our Supreme Court reversed and reinstated the trial court's order. In doing so the Supreme Court said:

By making this case turn on the issue of whether appellee waived his Rule 1100 rights during the sixteen-day period of delay between the expiration of the second defense-requested continuance and the commencement of voir dire, both the post-verdict court and the Superior Court assumed that, absent a valid waiver of Rule 1100 rights by appellee, Rule 1100 does not allocate the responsibility for the sixteen-day delay to appellee. At the time of trial, section (d) of Rule 1100 provided:

"In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

(1) the unavailability of the defendant or his attorney;

(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded."

In interpreting subdivision (1), this Court has made it clear that the period of excludable days is not necessarily measured by the length of time that a defendant was "unavailable." Instead, once it is determined that the defendant was unavailable, the critical inquiry is whether actual delay resulted from the defendant's unavailability. "If the 'unavailability' results in an actual delay in the proceedings, that delay is automatically excluded." *Commonwealth v. Millhouse*, 470 Pa. 512, 517, 368 A.2d 1273, 1276 (1977). So, too, under subdivision (2) it must be concluded that although a defense-requested continuance which exceeds thirty days serves as a triggering device for exclusion, the number of days to be excluded is not governed solely by the length of the continuance. Rather, as under subdivision (1), the number of days to be excluded is that "period of delay ... as results from" the continuance. *Cf. Commonwealth v. Wade*, 475 Pa. 399, 405–406, 380 A.2d 782, 785 (1977) (excludable delay caused by open-ended continuance measured from date of continuance request to end of delay). Here, therefore, the critical question is whether the sixteen-day period of delay "result[ed] from" a defense-requested continuance.

On this record, it appears that on May 23, 1975, upon the close of pre-trial motions, this matter would have proceeded to trial if appellee had not requested and been granted a second continuance. That continuance necessitated the placement of the matter of "backup" status behind two cases. Consistent with the court's business, those two cases were disposed of without undue delay, in sixteen days, and the trial of this case commenced immediately thereafter. The sixteen-day period during which the matter was on "backup" status must, therefore, be attributed to appellee.

*Commonwealth v. Robinson, supra* 498 Pa. at 385–86, 446 A.2d at 896–97.

Similarly, in the instant case, the entire period from October 23 to December 11, 1981 is the actual delay resulting from the appellant's failure to appear for trial on

October 23 and his appearance without counsel on October 26, 1981. On October 26, 1981, the trial court rescheduled the trial of this case for December 11, 1981 the earliest possible date consistent with the court's business. The Commonwealth was ready for trial on June 21, 1981 and all subsequent listings of the case. All the delays in this case were the result of the unavailability of the appellant or his counsel.[6]

■ Because the entire period from June 21, 1981 to December 11, 1981 was the result of the unavailability of the appellant or his counsel and is properly excludable under Rule 1100(d)(1), appellant has not been denied his rights and is not entitled to discharge.

■ Appellant also contends that he is entitled to discharge because of the delay of 65 days between the filing of the Commonwealth's third petition to extend on March 16, 1981 and the hearing on that petition on May 20, 1981. However, an unexplained delay in holding a hearing and ruling on a timely-filed application to extend does not warrant a defendant's discharge absent some prejudice resulting from the delay. *Commonwealth v. Williams*, 310 Pa.Super. 501, 456 A.2d 1047 (1983); *Commonwealth v. Fairley*, 298 Pa. Super. 236, 444 A.2d 748 (1982). Further, it is only when some prejudice is alleged to have resulted to the defendant from the delay that we must inquire into the reasons for the delay. *Commonwealth v. Williams, supra;*

6. Appellant cites *Commonwealth v. Manley,* 282 Pa.Super. 376, 422 A.2d 1340 (1980) as support for his contention that all the time between October 26 and December 11, 1981 cannot be excluded under Rule 1100(d). In *Manley,* the defendant appeared for trial on May 30, 1978 without counsel. The court then instructed the defendant to apply for the services of the public defender and continued the case. On September 1, 1978, the public defender was appointed to represent the defendant. There was no regular criminal court term scheduled during the summer months and the next available trial date after May 30 was September 25. A panel of this Court held in *Manley* that because the delay between May 30 and September 25 was "judicial delay", it could not be excluded under Rule 1100(d)(1) and could only be the basis of an extension under Rule 1100(c). However, after *Commonwealth v. Robinson, supra; Manley* is no longer valid precedent.

*Commonwealth v. Fairley, supra.* In the instant case, appellant does not allege any prejudice, nor does the record reveal any prejudice from the delay in holding the hearing on the Commonwealth's petition. Thus, appellant is not entitled to discharge because of the delay in holding the hearing on the Commonwealth's petition to extend.

Appellant also argues that the act of the police officer in confronting him and subsequently arresting him constituted a violation of his fourth amendment rights which, in turn, tainted the seizure of the wallet. Additionally, appellant argues that the illegal arrest tainted the on-the-scene identification, which appellant also asserts, was conducted in an impermissibly suggestive manner.

The threshold inquiry is whether there was a valid arrest. A warrantless arrest for a felony will be upheld where police have probable cause to believe (1) that a felony has been committed and (2) that the person to be arrested is the felon. *Commonwealth v. Davis,* 308 Pa.Super. 204, 454 A.2d 92 (1982). Probable cause is said to exist where facts and circumstances within the knowledge of the arresting officer are reasonably trustworthy and sufficient in themselves to warrant a man of reasonable caution to believe that the person to be arrested has committed the offense. *Id.* It is certainly true that flight in and of itself is not sufficient to constitute probable cause. *Commonwealth v. Pegram,* 450 Pa. 590, 301 A.2d 695 (1973). However, flight, coupled with some other fact, may well establish probable cause to arrest. *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973); *Commonwealth v. Gease,* 304 Pa.Super. 433, 450 A.2d 989 (1982); *Commonwealth v. Whitner,* 241 Pa.Super. 316, 361 A.2d 414 (1976).

In the instant case, the officer saw the defendants fleeing in a manner which indicated to him that they were escaping from the scene of a robbery. At the point of arrest, the officer had sufficient information which would justify a reasonable man to believe that a crime had been committed and that the appellant and his companions had

committed it. Therefore, appellant's fourth amendment rights were not violated and the wallet cannot properly be considered tainted evidence.

Appellant also argues that the wallet should have been excluded because the police officer extracted the wallet from the defendant's possession against his will due to the alleged menacing position of the officer's car in relation to the path the young men took fleeing the scene of the crime.

Abandoned property which normally may be obtained and used for evidentiary purposes may not be utilized where the abandonment is coerced by unlawful police conduct. *Commonwealth v. Jeffries, supra; Commonwealth v. Horsley*, 244 Pa.Super. 91, 366 A.2d 930 (1976). In the instant case, all the officer did was put himself in a better position to observe the young men's suspicious behavior on a city street. To do otherwise would subject the officer to a criticism of being derelict in the performance of his duties. One of the young men, on the other hand, spontaneously abandoned the property upon the sight of the police. Finding no unlawful act on the part of the police which motivated the abandonment, we hold the evidence to have been properly ruled admissible.

Having already established the appellant's arrest was legal, the on-the-scene identification therefore cannot properly be termed the fruit of an illegal arrest. We now turn to appellant's last contention, that the on-the-scene identification was impermissibly suggestive.

Preliminarily, it is well settled that an on-the-scene identification made shortly after the occurrence of the crime does not in and of itself offend a suspect's due process rights. *Commonwealth v. Carter*, 271 Pa.Super. 508, 414 A.2d 369 (1979). Absent some special element of unfairness, the close proximity in time and place to the actual offense so enhances the reliability of such an identification as to outweigh any possibility of irreparable misidentification that might arise from the witness' observance of the suspect in police custody. *Commonwealth v. Carter, su-*

*pra.* The lower court found that the appellant was identified by Mr. Thomas approximately five minutes after the incident. The appellant alleges unfairness resulted from the presentation of the wallet to the victim by the police immediately before the confrontation.[7]

In *Commonwealth v. Carter, supra,* we held that the simultaneous presentation of appellant and the weapon purported to have been used in the robbery did not render the on-the-scene identification suggestive so as to taint the subsequent in-court identification. Similarly, in the instant case the presentation of the wallet to Mr. Thomas shortly before the on-the-scene identification procedure did not render the identification impermissibly suggestive.

Furthermore, even if the on-the-scene identification had been suggestive, a proposition unsupported by the record, it does not necessarily follow that the trial identification was thereby rendered inadmissible, since we employ a totality of the circumstances approach to determine whether a questioned identification is reliable. *Commonwealth v. Satchell,* 306 Pa.Super. 364, 452 A.2d 768 (1982). We recently reiterated the relevant standard in *Commonwealth v. Johnson,* 301 Pa.Super. 13, 15, 446 A.2d 1311, 1312 (1982):

"The central concern where any identification is offered is whether, under the totality of circumstances, the identification was reliable. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). A pretrial identification will not be set aside unless the facts demonstrate that the identification procedure 'was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968)." *Commonwealth v. Linder,* 284 Pa.Super. 327, 337, 425 A.2d 1126, 1131 (1981). "[S]uggestiveness ... is only one factor to be considered

---

7. Appellant alleges that the victim's identification was predicated on his subjective evaluation of what the police told him. However, there is no evidence of any prompting or suggestion.

in determining the admissibility of identification testimony. Suggestiveness alone does not warrant exclusion. Instead '[i]t is the likelihood of misidentification which violates a defendant's right to due process....'" *Commonwealth v. Ransome*, 485 Pa. 490, 495, 402 A.2d 1379, 1382 (1979), quoting from *Commonwealth v. Sexton*, 485 Pa. 17, 22, 400 A.2d 1289, 1291 (1979). Factors to be considered in evaluating the likelihood of misidentification in a particular instance are:

> ... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson v. Brathwaite, supra*, 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154. *See also Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972).

■ The most important factor in the totality of the circumstances test is the opportunity of the witness to view the suspect at the time of the crime. *Commonwealth v. Davis*, 293 Pa.Super. 447, 439 A.2d 195 (1981). This would seem to be particularly so when the witness was the victim, for as we have recently noted, "Whenever the victim of a crime has an opportunity to observe the criminal, the impression of the face of an assailant is etched upon the prey by the terror of the occasion...." *Commonwealth v. Bradford*, 305 Pa.Super. 593, 598, 451 A.2d 1035, 1037 (1982).

■ The testimony of the victim in the instant case indicates that he had ample opportunity to view the perpetrator during the crime. The attack occurred near a street light and the victim had a good chance to look at the attackers. Moreover, Mr. Thomas recognized the appellant as a neighborhood youth whom he had seen before.

Given the gap of only five minutes between the crime and the confrontation and the inherent reliability of an identification made after so short a time, we conclude that the identification of the appellant provided by the victim at trial had an independent origin in the observation of the victim at the time of the crime.

Judgment of sentence affirmed.